CASE 6—PETITION EQUITY—APRIL 17.

# Thomas vs. Crout.

### APPEAL FROM KENTON CIRCUIT COURT.

1. A tenant has no right, after the expiration of his lease, to enter upon the leased premises and remove therefrom, buildings erected thereon, at his own cost for his own convenience.

2. Fixtures, which a lessee has annexed to the freehold, if movable at all, must be removed before the expiration of the tenancy. (*Ombony vs. Jones*, 19 *N. Y. C. A. Reports*, 238.)

3. The original doctrine that fixtures were generally regarded as immovable and belonging to the landlord, though erected by the tenant at his own expense, has been modified to meet the wants and necessities of trade and commerce and the arts and sciences, until now a majority of fixtures erected by tenants may be removed, whilst the tenant's dominion over the leased premises exists, but not afterwards.

JOHN F. & CHAS. H. FISH,        For Appellant,
CITED—

4 *Met.*, 357 ; *Johnson's ex'rs vs. Williams.*

2 *Smith's Leading Cases*, 249.

*Taylor's Landlord and Tenant*, 544–5, *and notes*; *Ib.*, 551.

10 *Barb. Rep.*, 496 ; 19 *N. Y.*, 234.

STEVENSON & MYERS,        For Appellee,
CITED—

*Taylor on Landlord and Tenant*, 3d ed., secs. 551, 552, 553, *pp.* 395–6.

7 *Taunton*, 191 ; *Lee vs. Riston.*

17 *Pick.*, 192 ; *Gaffield vs. Hopgood.*

1 *Atkyn.*, 477 ; *ex parte Quincey.*

1 *H. Blackstone*, 258 ; *Fitzherbert vs. Shaw.*

Thomas vs. Crout.

2 *Kent's Com.*, p. 346, *top.p.* 429, 9*th ed.*
*Revised Statutes*, 2 *Stant.*, *sec.* 25, *page* 230.
1 *Bush*, 463 ; *Musselman vs. Marquis.*

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Appellant had a written lease of a lot in Covington for two years from November 1, 1862, upon which he erected a frame house and shed for the purpose of baling and storing hay. Porter, from whom he leased, sold the property about one year before it expired to John and Jo. Younger, who sold it to Crout about one month after their purchase.

Thomas. paid Crout the ground rent after he purchased during the lease. When he paid the last month's rent in advance, he proposed to take the property for another year, when, as the only witness examined on this point says, " Crout replied that he was raising a company to go into the army ; that if he did, he would let him know through his son William, I believe ; but said Thomas could not have the lot at the same price he had been paying for it."

Thomas was then storing salt on the lot for L. D. Watson & Co., at thirty dollars per month, whilst he was paying Crout only eleven dollars per month.

Crout, early in December, notified Watson & Co. that he was the owner of the lot, and that, as Thomas' lease had expired, they must pay him rent, which they did, at the rate of thirty dollars per month, until the following May, when they made an arrangement with Thomas to remove the salt to another lot.

Immediately after removing the salt, Thomas commenced removing the house, whereupon Crout employed hands and fenced in the lot, which Thomas broke down;

and, thereupon, Crout brought this suit, enjoining Thomas from further interfering with his possession or premises.

Thomas, by answer and cross-petition, claims the building as his, erected not as a permanent fixture, but for the purposes of commerce and his trade, and claimed that he had, by parol, renewed the lease for another year; all of which was controverted.

The evidence is certainly insufficient to establish the renewal of the lease; and the claim by Crout on Watson & Co. to pay him the rent must be presumed to have been known to Thomas soon thereafter, as they ceased to pay him.

As said by the Appellate Court of New York in *Ombony vs. Jones* (19 *N. Y. Rep.*, 238), the general rule has been laid down in many cases, that things which a lessee has annexed to the freehold, if movable at all, must be removed before the expiration of the tenancy. (1 *Salk.*, 368; 1 *Atk.*, 477; 7 *Taunt.*, 191; 1 *Barn. & Ad.*, 394; 2 *Barn. & Cres.*, 76; 2 *Mus. & Wel.*, 450; 7 *Ia.*, 14.)

It is laid down in *Taylor on Landlord and Tenant, secs.* 551–2 *and* 3, that unless the lessee uses his privilege to sever his fixtures during his term, that he cannot afterwards do it; nor can a tenant remove a fixture after his lease has expired, and he has quit the premises, although he put it there himself; and that during the term a tenant may take away chimney-pieces, and even wainscots; but if afterwards, he is a trespasser; and numerous authorities are referred to in support of these rules. The lease here was for a fixed and determinate time; and to such leases these rules almost, if not universally, apply.

Whatever may have been Crout's rights under his deed from Younger as against his vendors, as there was no exception in the deed of the buildings, which, by *section* 25, *chapter* —, 2 *Stanton's Revised Statutes*, 230, is to be construed as including the buildings, yet this can affect

only the rights of the parties to the deed, and not the tenant who has made such erections as he may lawfully remove. But as Thomas did not exercise his privilege of removal before the expiration of his term, and made no contract for its renewal or extension, and even waited some months after his landlord, by a most unequivocal act, manifested a clear intention not to renew his lease, he had no right to remove, even if it be conceded the building was of the character which the tenant had a legal right to remove; nor can this right of Crout's to retain the erections be defeated, even if the vague and equivocal statement of the two Youngers, that they told Crout the building was Thomas', was established, instead of being, as it is, discredited by the only two disinterested witnesses present at the only interview between Crout and the Youngers; for if he took the lot subject to Thomas' claim, when Thomas, by his own conduct, lost his privilege, Crout's knowledge that the building was his would no more affect him than it would had he been the original lessor.

The original doctrine was, that fixtures were generally regarded as immovable, and, therefore, as belonging to the landlord, though erected by the tenant, and at his expense; but this doctrine has been modified, in modern times, to meet the wants and necessities of trade and commerce, and the arts and sciences, until now, perhaps, a majority of fixtures erected by tenants may be removed, if done whilst the tenant's dominion over the leased premises still exists, but not afterwards.

Whether the modifications have not already been carried to the full extent that a due regard for the rights of the landlord will permit, we can hardly suppose that it will ever be carried to the extent to permit one whose term has expired, either to hold over against

.the landlord's will and interest, for the purpose of removal, or permit him, if out of possession, to enter upon the landlord's or his tenant's possession, and disturb them for such purpose.

Wherefore, the judgment is affirmed, as the perpetual injunction was right.